UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-692-DJH-CHL

**JOSEPH MASTERSON,**                                                                                      **Plaintiff,**

v.

**XEROX CORPORATION, et al.,**                                                                       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Plaintiff Joseph Masterson ("Masterson") for leave to file a third amended complaint ("Motion to Amend"). (DN 60.) Masterson seeks leave to amend his complaint to add six new claims, including five state law claims and one claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. (*See* DN 60-1 ("Proposed Third Amended Complaint").) Defendants Metropolitan Life Insurance Company ("MetLife"), Gannett Co., Inc. ("Gannett"), and Xerox HR Solutions, LLC ("Xerox") filed a response to the Motion to Amend ("Response") (DN 66) and Masterson filed a reply ("Reply"). (DN 71.) This matter is ripe for review. For the following reasons, the Motion to Amend is **GRANTED**.[1]

---

[1] "The Sixth Circuit has not addressed whether a motion to amend is a dispositive or nondispositive motion." *Tyree v. U.S. Bank, NA*, 2015 WL 73656, at *1 (W.D. Tenn. Jan. 6, 2015). Most of the district courts in the Sixth Circuit appear to consider an order on a motion to amend as non-dispositive. *See, e.g*., *Young v. Jackson*, 2014 WL 4272768, at *1 (E.D. Mich. Aug. 29, 2014) ("A denial of a motion to amend is a non-dispositive order."); *United States v. Hunter*, 2013 WL 5820251, at *1 (S.D. Ohio Oct. 29, 2013) (stating that a magistrate judge's orders denying petitioner's motions to amend a petition pursuant to 28 U.S.C. § 2255 were non-dispositive); *United States v. Lewis*, 2012 WL 604296, at *1 (S.D. Ohio Feb. 24, 2012) ("The Magistrate Judge's decision denying Lewis's Motion To Amend his § 2255 Petition is a non-dispositive order."); *see also Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993) ("Under ordinary circumstances a motion to amend a complaint is 'a pretrial matter not dispositive of a claim or defense of a party' within the purview of Fed. R. Civ. P. 72(a)."). Based on the foregoing and because the Court ultimately concludes that the Motion to Amend should be granted, the Court enters the instant Memorandum Opinion and Order rather than submitting a recommendation to the district judge.

**Background**

A. Masterson's Allegations

The Court will summarize the factual allegations underlying this lawsuit here as it has not had occasion to do so previously. As is addressed below in more detail, for purposes of this Memorandum Opinion and Order, the Court construes the complaint in the light most favorable to the plaintiff, Masterson, and accepts all factual allegations as true. Masterson works in the mail room of the Courier-Journal, a newspaper based in Louisville, Kentucky. (DN 26 at ¶ 6.) Gannett is the Courier-Journal's parent company. During a two-week open enrollment period in early November 2011, Masterson purchased Accidental Death and Dismemberment ("AD&D") insurance for calendar year 2012 for himself and his "eligible dependents." (*Id.* at ¶ 7.) The benefits website maintained by Gannett stated that the AD&D coverage would be good for a payout of "8 x salary you + family;" Masterson's salary at that time was approximately $37,000. (*Id.*) The website offered additional child life ("Child Life") insurance for 2012 in the amount of $15,000, which Masterson also purchased. (*Id.*) The Gannett website defined "eligible dependent" as the spouse or domestic partner of the employee, the dependent child of the employee, or the dependent child of the employee's spouse or domestic partner. (*Id.*) With respect to an age limit for a "dependent child," the website stated that one may be "eligible up to age 26." (*Id.*)

Masterson paid for coverage under the AD&D and Child Life policies through deductions from his compensation from Gannett, and MetLife accepted the premiums. (DN 26 at ¶ 9.) Riley Masterson ("Riley"), the son of Masterson and his wife, Julia Masterson, died on or about September 26, 2012 at age twenty-two. (*Id.* at ¶10.) On or about October 23, 2012, Masterson

filed a claim seeking payment pursuant to the AD&D and Child Life policies. (*Id.* at ¶ 12.) Masterson submitted his claim to Gannett, which then submitted the claim to MetLife. (*Id.*) On or about November 8, 2012, MetLife sent Masterson a letter that purported to quote a "Gannett Plan" with respect to Child Life eligibility. (*Id.* at ¶ 13.) MetLife concluded that Riley was not an eligible dependent according to the language in the Gannett Plan, which MetLife excerpted as follows:

> Dependent children must be unmarried and under the age of 19. Coverage will continue until the end of the month in which the child attains the age 19. A child may be covered up to the end of the month in which the child attains age 23 if he or she is a full-time student, depends on you for at least 50% support, *and/or* is reported as your dependent on your most recent federal tax form.

(*Id.* (emphasis added).)

MetLife and Masterson offer different interpretations for the language excerpted above, hinging on the effect of the words "and/or" in the final clause. MetLife interprets the excerpted language as requiring that for a child over the age of 19 and under the age of 23 to be covered, he or she must meet *all three* of the following conditions: (1) be a full-time student; (2) depend on the policyholder for at least 50% of his or her financial support; *and* (3) be reported as a dependent on the policyholder's most recent federal tax return. (DN 26 at ¶¶ 13, 15.) Masterson interprets the same language as requiring that the child meet *only one* of the three conditions: (1) be a full-time student; *or* (2) depend on the policyholder for at least 50% of his or her financial support; *or* (3) be reported as a dependent on the policyholder's most recent federal tax return. (*Id.* at ¶ 14.) In its November 8, 2012 letter, MetLife requested documentation showing that (1) Masterson claimed Riley as a dependent on his most recent federal tax return; and (2) Riley was a full-time student at the time of his death. (*Id.* at ¶ 15.)

3

Masterson had never received the Gannett Plan or otherwise been made aware of the eligibility requirements as stated by MetLife. (DN 26 at ¶ 15.) When Masterson enrolled in the AD&D and Child Life plans, Gannett did not inform him that that Riley was ineligible or seek proof of his educational status or dependence for tax purposes. (*Id.* at ¶¶ 15, 22.) After receiving the November 8, 2012 letter, Masterson informed MetLife that he had not seen a written policy related to the Child Life or AD&D coverage. MetLife responded that Masterson could request a summary plan description ("SPD") from Gannett's human resources department. (*Id.* at ¶¶ 16-17.) Despite multiple requests, Masterson was unable to obtain the SPD or other plan documents from Gannett. (*Id.* at ¶¶ 18-20.)

Masterson subsequently obtained counsel. Again, in spite of multiple written requests, neither Masterson nor his attorney was able to obtain from Gannett, MetLife, or Xerox the SPD or other plan documents. (*See generally* DN 26 at pp. 12-13.) On or about July 30, 2013, MetLife denied Masterson's claim on the basis of the "dependent child" eligibility requirements set forth above. (DN 26 at ¶ 32.) Still, neither MetLife nor Gannett would respond in substance to Masterson's requests for a copy of the plan document that was the source of the purported eligibility requirement. (*Id.*) In September 2013, Masterson filed an appeal of MetLife's denial of his claim. (*Id.* at ¶ 35.) The same month, Masterson's counsel received from Gannett's in-house counsel a copy of a purported 2012 SPD. (*Id.*) Gannett claimed that the document was available on Gannett's website at the time of open enrollment in 2011. (*Id.*) Masterson alleges that the 2012 SPD produced by MetLife contains different terms than those relied upon by MetLife in denying his claim. (*Id.*) On or about December 5, 2013, MetLife issued a decision upholding its initial denial of Masterson's claims, based on the same rationale. (*Id.* at ¶ 38.)

According to Masterson, MetLife, too, questioned Gannett's definition of "dependent child," as well as Gannett's apparent lack of communication with MetLife or with Gannett's 25,000 to 30,000 employees regarding relevant plan terms. (*Id.* at ¶¶ 42-43, 47-48.) Masterson alleges that Defendants have not identified evidence that Masterson had in his possession the purported plan information showing that Riley was not an eligible dependent. (*Id.* at ¶¶ 48-51.) Masterson also maintains that MetLife has a conflict of interest given that it was the plan administrator and decision-maker on his claim. (*Id.* at ¶¶ 51-53.)

The current operative complaint in this case is Masterson's second amended complaint ("Second Amended Complaint"). (DN 26.) The Second Amended Complaint includes nineteen counts, including ten claims of breach of fiduciary duties owed pursuant to ERISA (Counts I-X), three claims for statutory damages and attorney's fees pursuant to ERISA (Counts XI-XIII), and six common law claims (Counts XIV-XIX). (DN 26 at ¶¶ 63-122.)

**B. Masterson's Motion for Leave to File Third Amended Complaint**

In the Motion to Amend (DN 60), Masterson alleges that for years Gannett has used its website to communicate with its approximately 25,000 employees regarding benefits, including health insurance. (DN 60 at pp. 1-2.) He claims that the position taken by Defendants in this lawsuit regarding AD&D benefits offered by Gannett is substantially different than the benefits described on the website, particularly regarding the age of eligibility for dependent children. (*Id.* at 2.) Masterson alleges that the purported plan documents that MetLife finally produced in July 2014 state that important plan information is on the Gannett website. (*Id.* at 3.) Moreover, by withholding the purported plan document, Defendants ensured that Masterson would be unable to pursue his claims. (*Id.*) Masterson points to the Supreme Court's decision in *Cigna Corp. v.*

*Amara*, 131 S. Ct. 1866 (2011) for the proposition that "'make whole' monetary damages are recoverable where harm has occurred from misleading statements and breach of fiduciary duties." (DN 60 at 3.) Masterson's Proposed Third Amended Complaint (DN 60-1) would add the following claims:

> *Count XX (against Gannett).* Treble damages, prejudgment interest, and attorney's fees, pursuant to Ind. Code §§ 35-43-1-2 and 34-24-3-1, for knowingly causing Masterson to suffer a pecuniary loss by being deceptive through the contents of the website;
>
> *Count XXI (against MetLife).* Treble damages, prejudgment interest, and attorney's fees, on a theory of vicarious liability for the actions of Gannett and Gannett Benefits set forth in Count XX;
>
> *Count XXII (against Gannett).* The Court construes Count XXII as a breach of contract claim for Masterson having sustained damages as a result of using the Gannett website.
>
> *Count XXIII (against Gannett).* Punitive damages, on the basis of gross negligence or reckless indifference to Masterson's rights by permitting inaccurate or deceptive terms to appear on the website;
>
> *Count XXIV (against MetLife).* Punitive damages, on a theory of vicarious liability for the actions of Gannett set forth in Count XXIII; and
>
> *Count XXV (against Gannett).* Statutory damages and attorney's fees, pursuant to ERISA, for failure to provide requested plan information related to a "health plan" and a "401k plan" within thirty days.

(*See generally* DN 61-1.)

Masterson argues that no prejudice will come to Defendants if he is permitted to file the Proposed Third Amended Complaint, given that there is no trial date in this case and that his proposed new claims relate to the same set of alleged facts as the existing claims. (DN 60 at 6.) He further argues that the Proposed Third Amended Complaint "satisfies the applicable 'plausibility standard' and sufficiently pleads 'factual content that allows the Court to draw a

6

reasonable inference that the named defendants are liable for the misconduct alleged.'" (*Id.* (quoting *Frierson v. Evangelical Lutheran Good Samaritan Soc'y, Inc.*, 2013 U.S. Dist. LEXIS 161412 (W.D. Ky. Nov. 13, 2013)) (internal citation omitted).)

### C. Defendants' Response to Motion to Amend

On September 24, 2014, Defendants filed their Response (DN 66) to the Motion to Amend. Defendants' position is that the Court should deny the Motion to Amend because the new claims proposed by Masterson "relate to" an ERISA plan and are therefore preempted by ERISA. (DN 66 at 1. (citing 29 U.S.C. § 1144(a)).) Moreover, Defendants contend that Masterson continues take a contradictory position by arguing that there is no ERISA plan in this case, all the while asserting claims pursuant to ERISA. (*Id*. at 2.) Defendants further argue that Masterson's claims in relation to the "health plan and the 401k plan" are inapposite because those plans have not been at issue in this case thus far. (*Id.*)

Defendants argue that the Court should deny the Motion to Amend because the new claims proposed by Masterson would not survive a motion to dismiss, as they "relate to" an employee benefits plan, 29 U.S.C. § 1144(a), which is a "deliberately expansive" standard, and they and bear all the characteristics of an action for ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B). (DN 66 at 3 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).) According to Defendants, all of Masterson's state law claims "relate to" an ERISA plan because they are premised on allegations that Defendants posted on the Gannett website false or misleading information regarding benefits available under the ERISA plan. (DN 66 at 5.) Defendants further argue that an additional ground for preemption exists in that Masterson's state law claims purport to provide additional remedies for persons pursuing claims under

7

ERISA-governed plans. (*Id.* at pp. 5-6 (citing *Pilot Life*, 481 U.S. at 51, 57.) Defendants argue that Masterson's claims are preempted to the extent that he seeks remedies other than those available under ERISA, such as treble damages and punitive damages. (DN 66 at 6.) For these reasons, Defendants argue, the would-be claims are futile and the Court should deny the Motion to Amend.

### D. Masterson's Reply

In his Reply (DN 71), Masterson argues that any decision regarding preemption would be premature because the Court has not yet concluded that ERISA governs this case. Masterson points to this Court's opinion in *Miller v. PPG Industries*, 237 F. Supp. 2d 756, 758 (W.D. Ky. 2002), for the proposition that before a court can make a determination that claims are preempted by ERISA, the court must hold that (1) an ERISA plan exists; and (2) the state law claims "relate to" the ERISA plan. (DN 71 at 2.) If there is no ERISA plan, or if the "safe harbor" exemption applies, Masterson argues, then no state law claim can be preempted for relating to an ERISA plan. (*Id.*) Masterson contends that the Court cannot and does not have sufficient information before it to rule on whether there is an ERISA plan or whether the safe harbor exemption applies because those are factual determinations that are impossible to reach on the existing record in this case. (*Id.* at pp. 3-4.) He further contends that at no point has he conceded that he was covered by an ERISA plan.

## Discussion

### A. Leave to Amend Pursuant to Fed. R. Civ. P. 15

The Court's consideration of the Motion to Amend is governed by Rule 15 of the Federal Rules of Civil Procedure. The period in which Masterson could have amended a pleading as a

matter of course has elapsed. *See* Fed. R. Civ. P. 15(a)(1)(A), (B). Thus, this case is within the province of Rule 15(a)(2), which provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Ordinarily, in the absence of undue delay, bad faith, or dilatory motive on the part of the plaintiff, leave to amend is liberally granted to afford the plaintiff an opportunity to test his or her claims on the merits." *Gilbert v. Norton Healthcare, Inc.*, 2011 U.S. Dist. LEXIS 153136, *2 (W.D. Ky. 2011) (citations omitted).

Nonetheless, leave to amend is not automatic. The Court has discretion to deny leave based on "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Crider v. Life Ins. Co. of N. Am. ("LINA")*, 2008 U.S. Dist. LEXIS 53812, *2 (W.D. Ky. 2008) ("An amendment is futile if the amended pleading could not withstand a motion to dismiss for failure to state a claim.") (citations omitted). When analyzing a motion to dismiss for failure to state a claim, the Court construes the complaint in the light most favorable to the plaintiff and accepts all factual allegations as true. *Id.* (citing *Bloch v. Ribar*, 156 F.3d 373, 377 (6th Cir. 1995)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Here, Defendants argue that Masterson's proposed claims could not survive a motion to dismiss due to the preemptive effect of ERISA, and therefore, the Motion to Amend should be denied on the basis of futility.

**B. Analysis**

"ERISA preempts state law claims that 'relate to' any 'employee benefit plan.'" *Miller v. PPG Indus., Inc.*, 237 F. Supp. 2d 756, 758 (W.D. Ky. 2002) (quoting 29 U.S.C. § 1144(a))

9

(citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)). "In order to find federal preemption of Plaintiff's claims, this Court must therefore overcome two hurdles, finding that an 'employee benefit plan' exists and that the state law claims 'relate to' that plan." *Id.* These are factual determinations. *See, e.g.*, *Huisjack v. Medco Health Solutions, Inc.*, 492 F. Supp. 2d 839, 846 (S. D. Ohio 2007). Defendants' arguments regarding ERISA's preemptive effect are well-taken. However, they are insufficient to compel denial of the Motion to Amend under the present circumstances of this case because Defendants have not overcome the first "hurdle." Specifically, the Court has not found that an employee benefit plan exists. If it were undisputed among the parties that ERISA governs in this case, or if the Court had already issued such a finding, Defendants might well succeed with their arguments that some of Masterson's proposed claims would not survive a motion to dismiss and that, as a result, the Motion to Amend should be denied. The reality is, however, that whether ERISA applies remains a hotly contested issue in this case, and the Court has not made a finding on the issue.

   The parties are engaged in a discovery dispute that has been briefed simultaneously with the Motion to Amend. (*See* DN 64 ("Motion to Compel").) The Motion to Compel relates to Masterson's efforts to conduct limited discovery outside of the administrative record. The Court determined that some narrowly framed discovery would be useful to permit the Court to determine whether ERISA governs. (*See* DN 51.) The Court will issue a ruling on the Motion to Compel (DN 64) by separate order. At this juncture, it suffices to say that to date, there has not been a determination that ERISA governs this case. Therefore, the Court cannot hold at this time that Defendants would prevail were they to file a motion to dismiss any of Masterson's proposed clams on the basis that they are preempted by ERISA.

Defendants argue that the Court should not permit Masterson to assert a claim related to the "health plan and the 401k plan" (*see* DN 60-1, Count XXV) because none of his existing claims relate to those plans and "[a]dding claims related to separate and distinct plans . . . would only serve to complicate and prolong the litigation." (DN 66 at 7.) The Court disagrees. Despite what one may infer from the lengthy procedural history in this case thus far, little, if any, progress has been made with respect to the merits of Masterson's claims. The Court finds that permitting Masterson to assert proposed Count XXV, related to the "health plan and the 401k plan" will not cause any significant delay, engender substantial additional costs, or otherwise prejudice Defendants.

Based on the foregoing, the Court concludes that justice requires it to grant the Motion to Amend and permit Masterson to assert the claims in his proposed Third Amended Complaint. Nonetheless, the Court reiterates its acknowledgement that at least some of Masterson's new claims may indeed be subject to dismissal if the Court were to find that ERISA governs this case. Defendants will be free to file potentially dispositive motions if such a determination is made.

Accordingly, IT IS HEREBY ORDERED that Masterson's Motion to Amend is **GRANTED**. Masterson shall file a document styled "Third Amended Complaint" **within ten (10) days** of entry of this Memorandum Opinion and Order. Such filing shall be comprehensive of ALL OF MASTERSON'S CLAIMS and shall not merely set forth new claims and incorporate by reference his previously-filed complaints.

cc: Counsel of record