UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-692-DJH

JOSEPH MASTERSON,                                                              Plaintiff,

v.

XEROX CORPORATION, et al.,                                                   Defendants.

## MEMORANDUM OPINION AND ORDER

The Court conducted a telephonic status conference in this case on August 23, 2016, with the following appearances: Ilam E. Smith on behalf of Plaintiff Joseph Masterson ("Masterson"); Robert L. Steinmetz on behalf of Defendant Xerox Corporation ("Xerox"); Mitzi D. Wyrick on behalf of Defendant Gannett Co., Inc. ("Gannett"); and Joshua J. Phillips on behalf of Defendant Metropolitan Life Insurance Company ("MetLife"). The Court discussed with counsel a number of issues surrounding Plaintiff's desire to take discovery in this case, including the production of the Gannett benefits website. (*See, e.g.*, DN 95, 121.) The instant memorandum opinion and order is entered in light of the Court's discussion with counsel during the August 23, 2016 telephonic conference.

## BACKGROUND

As the Court has noted in previous orders, this case suffers from a lengthy procedural history with little true substantive progress. The purpose of the instant order is to move the case forward by seeking a resolution to the issues surrounding the Gannett benefits website. On May 28, 2014, following an in-chambers conference with counsel, the Court entered an order (DN 51) regarding document production. The Court stated that it had "determined that [prior to entering a scheduling order,] it would be appropriate for there to be a brief period of disclosure . . . [in order

to] assist the parties in reviewing and evaluating the extent to which this case is governed by ERISA, and the extent, if any to which state law claims may be applicable." (DN 51 at 1.) The Court ordered as follows:

> [W]ithin forty-five days of the entry of this order, all defendants shall disclose to the plaintiff and to other parties any documents which may constitute an agreement, contract of insurance, plan document, summary plan description, or other document which *could be fairly understood to constitute all or part of the agreement with the plaintiff Joseph Masterson* with respect to the provision of life insurance for himself, his family, and his son, Riley Masterson, as alleged in the amended complaint. *Hypertechnicality is discouraged*.

(*Id.* (emphasis added).) Subsequent efforts by Defendants to comply with the May 28, 2014 order are described in an August 18, 2015 order (DN 87) entered by the Court. It suffices to say that Masterson alleged then -- and continues to allege now -- that Defendants failed to produce "[t]he Gannett Benefits Website." (*See* DN 56.) Masterson claims that the website includes information regarding the insurance plans provided by Gannett, including those plans in which he enrolled. (*Id.*)

In addition to briefing by all parties regarding scheduling, particularly regarding discovery, Masterson filed a motion to compel production of the website (DN 64). The Court entered a memorandum opinion and order granting in part and denying in part Masterson's motion to compel (DN 87). In that opinion, the Court described Masterson's position in relation to the import of the website as follows:

> Masterson argues that the Website is "used by Defendants to communicate with and enroll up to 25,000 people, and market and sell benefits, including life insurance." (DN 64 at 2.) Masterson alleges that based on "other purported plan documents" produced in this case, it appears that "information about the plan" is located on the Website, and that such plan documents direct employees to the Website in order to enroll. (*Id.* (citing DN 61-1).) Masterson emphasizes the Court's statement in the May 28, 2014 Order that

2

> "[h]ypertechnicality is discouraged." (DN 51.) He argues that Defendants are required, pursuant to the May 28, 2014 Order, to produce a full copy of the Website . . . because [it] fall[s] within the scope of the insurance agreement between Masterson and Defendants, as defined in the May 28, 2014 Order. (*See* DN 51.) Masterson describes Defendants' failure to produce a full copy of the Website . . . as part of a pattern of failing to provide Masterson with plan documents in spite of his multiple requests for the same.

(DN 87 at 3-4.) Addressing the motion to compel, the Court noted that the extent to which this case is governed by ERISA and the extent, if any, to which state law may be applicable, remain in dispute. (*Id.* at 6.) The Court further stated that unless and until the Court determines that ERISA fully preempts Masterson's state claims, there will be no ruling that discovery in this case is subject to the traditional limits on discovery in ERISA cases. (*Id.*) Moreover, the Court stressed, "[i]t should be clear from th[e] language [of the May 2, 2014 order] that Defendants were to turn over to Masterson not only the documents that Defendants believe ERISA requires them to produce." (*Id.* (citing DN 51 at 1).) The Court went on to deny the motion to compel as to MetLife and Xerox, crediting their representations that the website is not in their possession, custody, or control. (*Id.* at 7.) The Court granted the motion to compel as to Gannett, ordering it to produce, no later than September 11, 2015, an electronic copy of the website. (*Id.*) Later, after a September 10, 2015 telephonic conference, the Court ordered Gannett to produce an electronic copy of the website no later than September 17, 2015. (DN 95 at 1.) The Court stated that "it shall be sufficient for Gannett to produce screenshots of the website[,]" and that Gannett was "not [] required to recreate and produce an interactive version of the website." (*Id.*)

On November, 30, 2015, Masterson filed a motion for sanctions (DN 97) in relation to Gannett's purported failure to produce the website in compliance with the Court's orders. District Judge David J. Hale entered an order denying the motion for sanctions (DN 121). As

3

Judge Hale stated, Gannett produced screenshots of its website as it appeared in 2015. (*See id.* at 1.) Gannett represented in response to the motion for sanctions, supported by the "statement"[1] of John E. Camp, Vice President of Service Delivery for Xerox HR Solutions, LLC,[2] that it produced screenshots from September 2015 because screenshots from 2011, when Masterson enrolled in the insurance plans at issue in this case, and from 2013, when Masterson filed his complaint, "were not available" in 2015. (*See* DN 102-1.) Camp's statement also provides that the screenshots that were produced "show the screen shots that Joseph Masterson would have navigated through if he had been electing coverage under the [relevant plans] in September 2015," and that the screenshots depict what a website user would see if he or she was seeking benefits pursuant to a qualifying life event, rather than during an open enrollment period as Masterson did. (*Id.* at ¶ 5 ("The qualifying life event was selected because no open enrollment period was available on the site at the time the screenshots were produced. It should be noted, the available selections under a qualifying life event were the same as if a participant had been in open enrollment.").)

Judge Hale denied Masterson's motion for sanctions on July 14, 2016. (DN 121.) He determined that Gannett's actions in producing certain portions of the website as it appeared in September 2015 were "reasonable in th[e] context" of the undersigned Magistrate Judge's orders related to the website. (*Id.* at 2.) Judge Hale concluded that to impose sanctions under the circumstances would be incongruous with Gannett's actions. (*Id.*) He ordered the parties to participate in a conference with the undersigned Magistrate Judge, with one express purpose of

---

[1] The document submitted by Camp is identified as a "statement" rather than an affidavit or a declaration. It is signed and dated by Camp. It is not notarized.

[2] As of September 2015, when the screenshots were produced, Xerox HR Solutions was responsible for "administration and maintenance" of Gannett's benefits website. (DN 102-1, ¶ 3.)

the conference being "to determine the scope of discovery relating to the benefits website that remains to be completed." (*Id.*)

On August 23, 2016, the undersigned conducted a telephonic conference consistent with Judge Hale's order. The Court and counsel discussed the circumstances surrounding production of the website. Counsel for Gannett and Xerox represented that, consistent with their arguments in relation to the motion for sanctions, it is not possible to produce a copy of the website as it appeared in 2011 when Masterson enrolled or in 2013 when he filed his complaint. They further notified they Court that Xerox is no longer the site administrator for Gannett. Counsel for Defendants also continued to assert arguments related to their purportedly limited obligations to conduct discovery due to the ERISA claims in this case. These arguments are addressed below. The purpose of this memorandum opinion and order is to put to rest the issue of the Gannett benefits website and move this case forward.

**DISCUSSION**

**1. Discovery Related to Gannett Benefits Website**

As the Background section above shows, underlying the ongoing dispute regarding the website is the Court's order of May 28, 2014 regarding what documents Defendants were required to produce in order to ascertain the applicability of ERISA in this case. Defendants were ordered to disclose to Masterson "any documents which may constitute an agreement, contract of insurance, plan document, summary plan description, *or other document which could be fairly understood to constitute all or part of the agreement with plaintiff*." (DN 51 at 1 (emphasis added).) The Court further emphasized that "[h]ypertechnicality is discouraged." (*Id.*) Masterson has consistently alleged that the contents of the Gannett benefits website fall

5

within the broad scope of the Court's order as to what Defendants are required to produce. As a result, the Court ordered Gannett -- which apparently enlisted the help of former site administrator Xerox -- to produce to Masterson screenshots of the website "in its entirety." (DN 95 at 1.) Gannett and Xerox now admit that they did not produce the website in its entirety, in part because of their representation that it is impossible to reproduce the website as it appeared in 2011 or 2013, and in part because they believe they are not required to produce certain parts of the website due to the types of claims asserted by Masterson. (*See, e.g.*, DN 102-1 (statement of John E. Camp); DN 102 at 6 n.3 (purporting to explain why Gannett was not required to produce parts of the website related to the 401(k) and pension plans due to Gannett's interpretation of the law governing discovery in ERISA actions).)

The Court ordered Gannett to produce copies of the website in its entirety. Gannett failed to do so. This failure may have been influenced, at least in part, by some degree of ambiguity on the part the undersigned as to the time period for which the website should be produced. The Court recognizes that it did not expressly order Gannett to produce copies of the website as it appeared in 2011 (or, for that matter, in 2013). However, Gannett appears to have assumed that it could simply print out the website as it appeared in September 2015 when the Court's order requiring production was issued. It further assumed that it could print out the website as it appeared during the non-open enrollment period, when the website would permit changes in enrollment only pursuant to a qualifying life event. Masterson claims that the website contained plan information about the plan and that plan documents directed employees to the Website in order to enroll. The Court cannot assume that either the 2015 time period or the qualifying life event perspective accurately reflects what Masterson saw when he enrolled in 2011 or when he

filed his original complaint in 2013. *As Defendants know*, that is what Masterson has sought in relation to the website for over two years. For the foregoing reasons, Gannett's production -- with the assistance of Xerox -- has been insufficient thus far.

Defendants continue to argue that they need not engage in additional discovery regarding the website because such discovery is not permissible in the context of ERISA. As the Court has stated in previous orders, this argument is immaterial and unpersuasive—if not specious-- at this stage of the litigation. The purpose of the inquiry into the website stems from the Court's order of May 28, 2014 -- to identify, without being "hypertechnical," any and all "document(s) which could be fairly understood to constitute all or part of the agreement with the plaintiff Joseph Masterson with respect to the provision of life insurance for himself, his family, and his son, Riley Masterson." (DN 51 at 1.) The Court could have expressly limited its order to the "plan" as defined by ERISA, but it did not. Moreover, *no determination has been made* in this case that ERISA preempts Masterson's state law claims. (*See* DN 87 at 6-7 ("[T]he very purpose of the May 28, 2014 Order was to encourage Defendants to produce sufficient information to allow for a determination of whether ERISA applies in this case, and if so, to what extent. For Defendants to base their arguments in opposition to the Motion to Compel on the scope of discovery in ERISA cases is circular and not conducive to reaching a determination as to the applicability of ERISA.").)

Based on the foregoing, the Court directs the parties to engage in a brief period of discovery related to the Gannett benefits website. More specifically, the Court concludes that Masterson is entitled to discovery regarding the contents of the Gannett benefits website *at the time that he utilized it in 2011 through the time that the lawsuit was filed in 2013*, as well as the

7

ability of Gannett, Xerox, and/or any website administrator that may currently be employed by Gannett, to produce copies of the website as it appeared during that time period. Masterson may conduct such discovery through any of the methods permitted by the Federal Rules of Civil Procedure, including, without limitation, depositions.

2. **Defendants' Motion for Protective Order**

Defendants have filed a motion for protective order (DN 99) holding that, pending a determination as to whether ERISA preempts Masterson's state law claims, they need not respond to certain written discovery requests (DN 99-2) served on them by Masterson. (*See also* DN 103 (response); DN 107 (reply).) In the alternative, Defendants request that the Court stay discovery in this case until a determination is made regarding the applicability of ERISA. Defendants' latter request is well-taken, particularly in light of the instant order permitting discovery only on issues related to the Gannett benefits website.

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a scheduling order may be modified only for good cause and with the judge's consent. *See* Fed. R. Civ. P. 16(b)(4). As has been noted several times herein, the progression of this case has been unusual and meaningful progress has been slow. In fact, there is no comprehensive scheduling order now in effect. The purpose of the instant order is to resolve the issues surrounding the Gannett benefits website, as well as to close that portion of this case, beginning with the May 28, 2014 order, devoted to determining the full extent of the documents that could be considered part of Masterson's agreement with one or more of the Defendants. Accordingly, the Court finds that the motion for protective order should be granted in part. To the extent that any previous order of the Court can be construed as an applicable scheduling order, good cause exists to modify such order and stay

all discovery with the exception of the strictly confined website-related discovery expressly permitted herein.

Before moving on, the Court notes that it has examined the discovery requests served by Masterson that are now at issue in Defendants' motion for protective order. A number of the written discovery requests relate to the Gannett benefits website.[3] While certain aspects of those requests appear to be permissible in light of the brief discovery period permitted herein, the instant order *does not* permit Masterson to simply re-serve his previously served discovery requests that relate to the website. Rather, he must ensure that any and all discovery requests that he serves during this period of limited discovery are strictly confined to the scope of the instant order.

**3. Masterson's Motion to Strike**

Masterson has filed a motion (DN 108) to strike the reply (DN 107) filed by Defendants in support of their motion for protective order. Defendants filed a response in opposition and Masterson filed a reply. (DN 109, 111.) This motion is ripe for review.

Masterson's motion to strike relates to Defendants' pending motion for protective order (DN 99), which is granted in part herein. Masterson seeks to have Defendants' reply in support of the motion for protective order -- or at least portions thereof -- stricken from the record. Masterson argues that Defendants raised certain arguments for the first time in their reply. For example, he contends that Defendants for the first time make an argument regarding a burden that would purportedly be imposed on them if they were to respond to his discovery requests, and that they rely in their reply (erroneously, Masterson says) on several cases that they did not

---

[3] At a minimum, the following discovery requests relate to the website: (a) Interrogatory numbers 5, 6, 8, 9, 14, 16, 20, 21, and 25; (b) Request for Production numbers 4, 8, 11, 12, 18, 22, 23, and 25; and (c) Request for Admission numbers 7, 11, 12, 14, 16, 17, 19, 22, 23, and 24.

discuss in their motion. It is not entirely clear from Masterson's motion whether he requests that the reply be stricken as a whole, as he seems to suggest at the outset of his motion, or whether he seeks only to strike those portions of the reply that discuss and rely on three particular decisions, as the final sentence of his motion seems to suggest.

Defendants filed a joint response to the motion to strike (DN 109). They characterize it as an attempt by Masterson to file a sur-reply to the motion for protective order without seeking leave of court. (*Id.* at 1.) They state that they would not object if the Court chooses to treat the motion to strike as a sur-reply and considers Masterson's arguments in relation to the motion for protective order. However, they contend, the motion is meritless as a motion to strike. Defendants argue first that motions to strike pleadings are governed by Rule 12(f) of the Federal Rules of Civil Procedure and that a reply brief is not properly considered a "pleading" under the Rules. They further argue that their reply merely responds appropriately to the arguments raised in Masterson's response to the motion for protective order. Accordingly, they argue, the motion to strike is both procedurally and substantively deficient and should be denied.

Masterson's reply (DN 111) does not address the arguments raised in Defendants' response. Rather, it consists of arguments as to why ERISA does not control in this case, why Defendants' motion for protective order is misplaced based on the procedural posture of this case, and how Defendants' attorneys have acted in bad faith. (*See, e.g.*, *id.* at 3 ("In the end, Defendants' motion for protective order and corresponding Reply brief, continue Defendants' strategy of foisting as much litigation burden as Defendants can muster into the path of Plaintiff, attempting to force him into unnecessary rounds of discovery and multiple trials, while doing their best to draw a veil or otherwise conceal their misconduct.").) Masterson's vitriol is

misplaced, particularly in the context of a motion to strike. Moreover, because his reply is essentially a diatribe regarding the entirety of this case and is nearly devoid of references to the motion to strike,[4] the Court will not consider the reply in addressing the motion to strike.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings. It provides that upon a motion made by a party, "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).[5] A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)-(2). "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, 2013 U.S. Dist. LEXIS 59962, *12 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Intern. Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)). "Striking a pleading is a drastic remedy to be resorted to only when required for purposes of justice." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States.*, 201 F. 2d 819, 822 (6th Cir. 1953)). "A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand

---

[4] With the exception of the caption and the first three sentences, the reply is devoid of references to the concept of striking anything from the record. The sentences that do address the motion to strike either rehash the motion itself or make vague references to case law without any accompanying analysis. (*See, e.g.*, DN 111 at 1 ("This Court thus, pursuant to that line of authority may strike such arguments and portions of Defendants' Reply, as it has done many times in the past. The authorities cited by Defendants in their Response have never prevented this.").)

[5] The Court acknowledges Defendants' argument that Rule 12(f) does not actually apply to motions to strike reply briefs because a reply is not a "pleading" for purposes of Rule 7(a). Decisions of this Court routinely address motions to strike portions of filings beyond those listed in Rule 7(a), including reply briefs, in the context of Rule 12(f). *See, e.g.*, *Pixler v. Huff*, 2011 U.S. Dist. LEXIS 133185, *47-48 (W.D. Ky. Nov. 16, 2011) (denying, pursuant to Rule 12(f), a motion to strike a reply in support of a motion to dismiss). Without ruling that a reply brief is a "pleading," the Court will do the same here.

would prejudice the party." *Id.* (citing *Ameriwood*, 961 F. Supp. At 1083); *see also Pixler*, 2011 U.S. LEXIS 133185 at *47 ("'The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the kind of language used or that the allegations are unmistakably unrelated to the subject matter.'") (quoting *Pessin v. Keeneland Ass'n*, 45 F.R.D. 10, 13 (E.D. Ky. 1968)).

The Court has reviewed the parties' briefing in relation to Defendants' motion for protective order. The Court concurs with Defendants that their reply directly responds to Masterson's response in opposition to the motion. "[T]he purpose of a reply brief [is] to address the opposing party's arguments raised in a response brief." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797-98 (W.D. Tenn. 2012) (in context of a motion for leave to file sur-reply, denying motion on basis that no new arguments were raised in reply brief and proposed sur-reply actually sought to raise new arguments). In their reply brief (DN 107), Defendants respond to the arguments raised by Masterson in his response in an effort to reinforce the arguments that they asserted in their motion. This is consistent with the purpose of a reply brief. The Court finds that Defendants' reply is not prejudicial to Masterson; nor does it raise any of the other concerns identified in Rule 12(f). *See* Fed. R. Civ. P. 12(f) (setting forth Court's authority to strike material that is insufficient to support a defense, "redundant, immaterial, impertinent, or scandalous").

Additionally, the motion to strike and the reply in support thereof contain lengthy arguments by Masterson regarding what he sees as Defendants' problematic use of case law in their reply in support of the motion for protective order, as well as his view of this case as a

whole. (*See generally* DN 108 (addressing at length a Sixth Circuit decision and two decisions of this Court).) Masterson appears to use his motion to strike and reply for the very improper purpose that he attributes to Defendants -- as vehicles to assert arguments that he should have raised in earlier filings, if at all. As Defendants point out, Masterson could have sought leave to file a sur-reply to the motion for protective order. He did not do so, and his arguments are not consistent with the purposes of a motion to strike and a reply brief.

Accordingly, Masterson's motion to strike (DN 108) is denied.

### 4. Masterson's Motion to Compel

Finally, Masterson's motion to compel is ripe for review. (DN 114; *see also* DN 117 (response); DN 119 (reply).) Masterson asks the Court to compel Gannett and Xerox to participate in Rule 30(b)(6) depositions. Masterson argues that extensive discovery is permissible, even required, in order for the Court to determine the extent to which ERISA applies in this case. It should be obvious from the Court's other rulings in the instant order that Masterson's motion is premature. To date, the discovery permitted in this action has been limited in scope, specifically to determine what documents may constitute the agreement entered into by Masterson and one or more of the Defendants. The desire to answer that question remains the goal of the instant order. The Court finds that at this juncture, Masterson may not take the wide-ranging 30(b)(6) depositions of Gannett and Xerox that he seeks. It would not be prudent to permit him to take such depositions at this time; however, a time *may* arise in the future when Masterson will be permitted to do so. For example, the Court may determine that no additional discovery is needed before it will make a determination as to the applicability of ERISA. The scope of any later 30(b)(6) depositions will be impacted by whether or not ERISA

<br>

governs due to the evolving limitations on discovery in ERISA actions. Consistent with the ruling in Section 1, above, Masterson may take one or more 30(b)(6) depositions on the topics discussed therein. Accordingly, the motion to compel (DN 114) is denied without prejudice.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED as follows:

(1) The parties shall engage in a brief period of discovery related solely to the Gannett benefits website. All such discovery shall be completed **no later than December 9, 2016**. Masterson is entitled to conduct discovery on (a) the contents of the Gannett benefits website; and (b) the ability of Gannett, Xerox, and/or any website administrator that is currently employed by Gannett to produce copies of the website. Discovery on both categories identified herein shall be limited to the period of 2011, when Masterson allegedly utilized the website in connection with the events underlying this litigation, through the date on which Masterson filed his original complaint in this action.

(2) Defendant's motion for protective order (DN 99) is **GRANTED IN PART**. All discovery not expressly permitted by the instant memorandum opinion and order is hereby STAYED pending further ruling of this Court. The motion for protective order is **DENIED IN PART**, insofar as it seeks a ruling that Defendants need not respond to Masterson's written discovery requests pending a ruling as to the applicability of ERISA in this action.

(3) Masterson's motion to strike (DN 108) is **DENIED**.

(4) Masterson's motion to compel (DN 114) is **DENIED WITHOUT PREJUDICE**.

(5) The Court's STANDING ORDER requiring ALL parties to contact the Court to request a telephonic conference before filing a discovery-related motion REMAINS IN EFFECT.

Counsel may request such a conference by contacting Case Manager Theresa Burch at theresa_burch@kywd.uscourts.gov.

cc: Counsel of record

1:00